Paxson *v.* Sweet.

trial of the appeal in March, 1832, the Common Pleas dismis-sed the appeal; 1st, because the justice below had *altered and amended his docket* since the rendition of the judgment; and 2d, because by the justice's certificate, *it did not appear that the ap-pellants or either of them were present at the rendition of the judg-ment,* to which decision of the Common Pleas the appellants excepted, and a state of the case was made, by which it was agreed to submit the case to this court for their opinion, and that if the Common Pleas had erred in dismissing the appeal, the same should be reinstated; upon which,

*Saxton,* for the appellants, now moved for a mandamus, or an order of this court, directing the Court of Common Pleas to reinstate the appeal, and insisted, that the Common Pleas had erred upon both the grounds assigned for dismissing the appeal.

---

SAMUEL PAXSON v. GEORGE SWEET, Street Commissioner of the City of Trenton.

The corporation of the City of Trenton in passing the ordinance, requiring the owner of every lot, fronting on a certain section of Greene Street, to fix curb stones and make a brick way in front of his lot, &c. did not exceed their authority. Such an ordinance is constitutional and legal.

A By-Law to be set aside ought to be demonstrably shewn to be unreasonable, and contrary to some great public principle.

---

George Sweet, street commissioner of the City of Trenton,

brought an action of debt against Samuel Paxson in the court for the trial of small causes. On the return of the summons, the plaintiff filed his statement of demand, and the defendant did not appear, and the reason assigned for his absence as stated by the justice in his transcript, was, " that he wished to have the benefit of taking up the proceedings here had, by certiorari to the Supreme Court."

Judgment was given by the justice in favor of the plaintiff— which is removed into this court by certiorari.

*Attorney General* for plaintiff in certiorari.

*Potts* for defendant in certiorari.

FORD, J. The corporation of the City of Trenton passed an ordinance requiring the owner of every lot, fronting on a certain section of Greene-street, to fix curb stones and make a brick foot way in front of his lot; and if any owner should not execute the order after notice, that the street commissioner should perform the work, and recover the actual expenses of the same, with an addition of five per cent. and costs in an action of debt.

The plaintiff being the owner of a lot in that section of Greene-street, who did not comply with the ordinance after notice, the work was performed by the street commissioner, George Sweet, who recovered judgment for it according to ordinance against the plaintiff. The judgment being removed into this court by certiorari, the ordinance itself is objected to as being unconstitutional and illegal.

First. It is asserted as a constitutional principle, that the expense of performing works for public use and accommodation must be assessed on every citizen according to his property, and no share of public work can be assigned to him as his individual quota; that it may lead to the direful oppression of an individual who happens to be obnoxious, and is of the essence of tyranny. That no man can be constitutionally bound to make improvements for public benefit at his individual expense. That the legislature cannot grant such power to a corporation, nor exercise it in the state themselves. That if they were to pass a law that each citizen should repair the high ways on his land at his own expense for public use, it would be unconstitutional and void.

Paxson *v.* Sweet.

These propositions cover a great deal of ground and must be freed from all foreign matter first, and then each one be taken separately in order to give it a fair consideration.   The matter at present under examination is the constitutionality of the law and not its reasonableness or unreasonableness; a law may be highly *impolitic* without being unconstitutional.   Thus a law to permit horse racing, gambling, and disorderly houses, might be considered extremely unreasonable and impolitic, but no man in his sober senses would venture to call it unconstitutional.— Therefore in considering the present point I lay all arguments touching the unreasonableness of this ordinance out of view, reserving them for consideration under a separate head; to prevent their interfering with the constitutional question.

Now I think the very frame of our government shews a sufficient authority in the legislature to grant to the corporation, if it saw fit, the power of passing such an ordinance as the present which is not shewn to contravene any clause expressed or principle necessarily implied; in the constitution of this state, or of the United States; and the legislature possesses supreme power within those limits by the very frame of our government. The first section of the constitution of New Jersey vests in it all the powers of an independent government, and these are necessarily supreme and sovereign, in subordination only to our Union and the constitution of the United States.   According to the Declaration of Independence " *it may do all acts and things which independent states may of right do.*"—Being an independent government, there is no power to prevent it from enacting, if it sees fit, that each person shall keep the public high ways in repair over his own land at his own expense.   Laying aside the reasonableness or unreasonableness of such a law, I ask where the power resides for overruling it?   It cannot be in the government of the United States; unless the law impugn their constitution, that government concedes to our state its entire independence.   Nor can such a controlling power reside in any foreign government, or in this court; and least of all in a private citizen, whose personal resistance would be altogether too feeble, unless he excited an armed insurrection, which would amount to treason.   If there be no legal restraint on the legislature, excepting within the limits before mentioned, then they

are a supreme, sovereign and independent government; and the assumption that such an enactment would be unconstitutional and void, remains a naked assertion entirely unproved and altogether gratuitous. If the legislature had made it an article in the very charter that each citizen should place curb stones and pave a foot way in front of his lot at his own expense, as an independent government they would have been amenable for it to no other government, tribunal or authority, nor could any of them have declared it void.

It was slightly insinuated that the ordinance contravenes the fifth amendment of the constitution of the United States—" that private property shall not be taken for public use without just compensation," but it was judicious not to press the argument; it would have to turn on the adequacy of compensation, which beside being a matter of mere fact, proper for the jury only, might be proved in ways that are abundant. The citizen receives it in part, by its adding to his private property an increase of its intrinsic value either for sale or enjoyment; by the health and comfort of his own household; by his enjoyment of the like foot ways every where else, in which he freely participates without contributing to their expense; he receives it in his franchise as a member of the corporation, in regulated markets, a vigilant police, and the innumerable pleasures, conveniences, benefits and security of an orderly city. I shall add under this head nothing further; the constitutional objection is entirely unsupported.

The questions remaining to be considered are, have the corporation exceeded the authority given to them in the charter, and is this a reasonable by-law?

Second. Have the corporation exceeded their authority in passing this ordinance? The fourth section in the original charter, *Rev. Laws* 125, is exceedingly broad. It is to make *any ordinances* which to them shall appear necessary, for the good government of the city and the inhabitants thereof. They are not to be such as the legislature may deem necessary; their time cannot be spent in legislating for every petty corporation in the state. The power of ordaining laws for the good government of the city, is under no other restriction than that they

shall not contravene the constitutions or laws before mentioned, its terms import all ordinances which they may deem necessary; and their opinion of its necessity is evinced by their having or-dained it. Every ordinance is valid under the charter, unless it is contrary to the constitutions, or to some law or laws of the state, and I think this has appeared not to be repugnant to any article, section, clause or principle in the constitution; therefore it must be valid, unless,

Thirdly, It should appear contrary to some law of the state. And this puts in issue its reasonableness; for it is freely con-ceded, that if a by-law be unreasonable in a legal sense, it is contrary to the law of the state. " Every by-law must be rea-sonable in itself." *Bac. Abr. tit. By-law.*

If the ordinance laid this burthen on one particular citizen by name, to pave before his lot, and exempted the citizens and owners of all other lots, it would be a dangerous law indeed, and might be an engine of great individual oppression and tyran-ny; but to such a law it has not the most distant resemblance, neither in point of principle nor operation. It applies to the whole body of freeholders in that street, without a single excep-tion, and therefore without the least respect to persons, and brings them under that common measure which had been prac-ticed and meted out to the freeholders in every paved part of the city; and it seems analogous to the law of the state also, for the making and reparation of high ways. All persons may be warned to work, at their private expense too, not only in a par-ticular district, but in a particular spot, and that where the road master may direct, and must continue to work there from day to day until the work is done to his satisfaction, and in the manner he directs. If one of these systems is personally oppressive and odi-ous, the other must be so too, for they each exact personal labor of the citizen, at his own expense. The only compensation to the cit-izen under the state law is the good roads he enjoys in the rest of the state without being any expense to him. In like manner the freeholders of Greene-street have the enjoyment of paved streets elsewhere without any expense to them.

But it is said to be inherently unjust and unreasonable to make one man pave a foot way at his own expense for the con-venience of the city. The same might be said of compelling

one man to work on the high way at his own expense for the convenience of the public. But it is not in either case one man, it is a whole class of men, without a single exception, comprising all owners of houses and lots; a kind of property immoveable in its nature, that must rise or sink with the prosperity of the city; unlike personal property, which in one day can be transferred to a more healthy and convenient place, if convenience and health should be neglected here. It is the very burthen that has been assumed or borne at their own expense in every paved street in the city by the owners of lots ever since the commencement of the charter. The case seems to show that the corporation have never made these side walks with city funds at common expense, except cases where the expense of suing would have been more than the loss of the debt. Might not the charge of undue influence and partiality be flung in the face of the corporation justly, if they should apply the common funds to making side pavements for the owners of lots in Greene-street, when the owners of lots have made them in every other street at their private expense? The general law cannot be changed without injustice to those on whom it has had its past operation. With what face can they be made to pave side walks in Greene-street for relief of those owners, after having been obliged to pave their own without assistance from any body? If the policy is now to be changed, they should be allowed a charge against the corporation for the expense of each man making his own side walk, with interest from the time they laid out their money, and then lay a general tax for their individual reimbursement. Equality is equity; the measure for one street should be meted to all alike. This ordinance is a general tax on all owners, with a privilege of each doing the work for himself, the charge of five per cent. being perhaps as little or less than it would cost him to oversee it personally. The improvement gives an additional value to each lot whether it be for habitation or for sale. Why should corporation funds be expended on improvements to private property in which the public cannot participate! The lot is worth as much more as is expended on it. When the owner sells his lot he will put this increased value in his own pocket, and therefore he ought to do the work himself or pay an equivalent for having it done in some way. If any

Paxson *v.* Sweet.

private citizen of a corporate town could arrest the improvement of its streets by choosing to keep an unpaved and muddy walk in front of his lot, the pavements at each end of it would be nearly useless; their utility depends on their continuity. When the side walks are done, the expense of paving gutters on each side and covering the street between them with gravel, falls on the city funds. The corporation have adopted this system of improving their streets as the most just and equitable between the city and lot owners that they could devise. If it be not the wisest possible mode, it is not so unreasonable as to make the ordinance void. Before a by-law can be set aside on this ground, its unreasonableness must be shewn demonstrably.— There should be no equipoise or vacillation in the beam, the scale containing the proofs should instantly descend and hold the counter proofs in steady suspension. The by-law ought to be contrary to some great public principle. I perceive nothing of that kind against the present ordinance and therefore am constrained to say, that the judgment must be affirmed.

DRAKE, J. An action was brought by Sweet, the plaintiff below, as street commissioner of the city of Trenton, against Paxson, for materials furnished and labor done, in paving the foot walk on the west side of Greene-street, in said city, adjoining a lot of the said Paxson; on which, at that time, no house was erected.

This paving was done under the authority, and in pursuance of an ordinance of the common council of the said city, passed the 26th day of September, 1828; by which it was directed, that the owners of land adjoining a certain part of Greene-street (particularly specified) should have " good and sufficient curb-stones fixed against the front edge of the foot ways at the distance fixed in the fourth section of the ordinance to which this is a supplement, and have their respective foot ways paved with good hard brick, except the cart-ways into their alleys, or yards, which may be paved with small pebbles, or good gravel, and except opposite those places where no houses have been erected : and in such places, the brick pavement shall be laid six feet from the curb stones to the opposite side of the foot way, filling up the space between the pavement and their fences res-

pectively with good and sufficient gravel."—And further enacting, " that if any person owning a lot as aforesaid shall neglect, for fifteen days after notice given by the street committee, or a majority of them, to have his or her curb-stones and pavement fixed and laid agreeably to the directions of this ordinance, then it shall be the duty of the street commissioner to have the same so fixed and laid as soon as conveniently may be, and keep a just and true account of the expense thereof ; and that the amount of said expense, with the addition of five per cent. thereon, should " be recovered by the said commissioner for the use of the city, by action of debt, with costs of suit."

The plaintiff below recovered judgment for the amount so expended by him upon the foot walk fronting the defendant's vacant lot, situate on Greene-street aforesaid. And this certiorari is brought for the purpose of reviewing that judgment.

Our attention is specially directed by the counsel to the fourth reason filed, which attacks the validity of the judgment, by questioning the authority of the corporation of the city of Trenton, to pass and enforce such an ordinance or by-law, as that set out in the state of the case.

" The modern doctrine is, to consider corporations as having such powers as are specifically granted by the act of incorporation, or as are necessary for the purpose of carrying into effect the powers expressly granted, and as not having any other." *Kent's Comm. p.* 239. And again : " As corporations are the mere creatures of law established for special purposes, and derive all their powers from the acts creating them, it is perfectly just and proper, that they should be obliged strictly to shew their authority for the business they assume, and be confined in their operations to the mode and manner, and subject matter prescribed." And see, to the same effect, 1 *Term Rep.* 118 ; 2 *Cranch,* 127 ; 1 *Bay,* 46 ; 15 *Johnson,* 358 ; 5 *Cowen,* 560 ; 1 *Halsted.* 352 ; 2 *Bacon's Abr.* 8.

These doctrines harmonize with our political principles, as to delegated powers. I deem them sound ; and that it is expedient to preserve them in their purity and strength.

The city of Trenton was incorporated by an act of the legislature, passed the 13th day of November, 1792. (*Rev. Laws.,* 125.) The charter is a very naked one, containing much less

extensive grants of power than had been bestowed on several other cities in the state. By the act, the common council are authorized " to make such by-laws, ordinances, and regulations, in writing, not inconsistent with the laws and constitution of this state, or of the United States, as to them shall appear necessary for the good government of the said city." But no specific authority is given in relation to streets and highways. At that time however, and before, the inhabitants of cities, as well as townships, appear to have had the power of appointing surveyors and overseers of highways. (*Allinson's laws*, 390.) Which overseers were authorized *to call out the inhabitants to repair the roads by labor*, in proportion to their circumstances.

By a supplement to the aforesaid act of incorporation, passed the 14th day of December, 1826, the common council are authorized to make such by-laws and ordinances, " as to them shall appear necessary for the good government of the said city, and the inhabitants thereof, and for the regulation and paving of the streets and highways of the said city, and the same to put in execution, revoke, alter, and make anew, *as to them shall appear necessary and convenient.* It is upon this act, more especially, that the counsel for the city reposes, as containing full authority for the ordinance in question ; and it appears to me that upon its sound construction this cause must be decided.

Upon the argument, the right of the corporation to make streets, and keep them in repair, and pave them if necessary, was not disputed. The controversy relates rather to *the mode of effecting* these improvements. The counsel for the defendant below contending, that it can be done only by *general assessment and taxation ;* and the counsel for the city insisting, on the contrary, that it may be done in such manner as the common council may deem to comport with *necessity and convenience*, restricted only by such limitations as control the legislature itself.

It is perhaps unnecessary to inquire into the powers of the legislature, relative to this subject. They may *have* powers which they would not *exercise* or *delegate*, without great necessity. And in this instance, because the power is not *prohibited*, it does not follow that it is *granted.* And if the exercise of the power be of an unusual and doubtful character, the grant should be very explicit, to satisfy a court of its reality.

The truth is, this law, as all others, must have a *reasonable* construction, giving to the corporation the power to effect the purpose, and in such ways, within the language of the act, as comports with the principles of our free government, and the established laws and usages of our people.

The council are authorized, by this supplement, as well as by the charter, to make laws for *the good government of the city.* No doubt this expression authorizes ordinances providing for many purposes connected with the welfare of the inhabitants, besides the mere maintenance of good order, and among others, for the prevention of all acts, which have a tendency, not merely to create technical nuisances, but seriously to interfere with, or endanger the lives, health, comfort, or property, of the other citizens. And in this point of view, the cleanliness of the streets, and their freedom from dangerous obstructions may well be comprehended under this authority. But this power is to be exercised *generally*, I do not say *universally*, by prohibitions, or *by controlling the use* of property, rather than by the imposition of original and positive acts of duty upon the inhabitants. For instance, a corporation, under this authority, should not undertake to compel a man to build a house; but if he do it, they may require it to be done with safe materials. They should not oblige him to keep a fire in it; but if he do, he must cleanse his chimnies at proper intervals. They should not order him to dig a well; but if he do, he must make it secure. In towns, and cities, where many people and much property, are collected within a small compass, there is constant occasion for the operation of that principle of natural law—that each individual should so use his own, as not to interfere with the rights of others. And this is the just foundation of most of the municipal regulations of this description.

It is under the latter clause of this act, that this ordinance must be supported, if supported at all, to wit: that which respects the regulating and paving of the streets and highways.

What is the property to be improved? A public street, adjoining a lot of the said Paxson; not a part of his exclusive property, nor even a part over which the public have an easement, but ground in which he has no more right of property than any other citizen. If his title had covered that part of the street, it would

make no difference, in my opinion, although some of the plaintiff's arguments would in that case be more applicable. But the state of the case says *adjoining the defendant's lot,* and the ordinance embraces such a case. The whole street, as well the sides, as the centre, is a common highway, for the use of all the citizens; and the pavement of the sidewalks, in towns, where there is much business done, and much passing and repassing, is more essential to the comfort and convenience of the inhabitants than that of the middle of the street. The act of 1826 calls it a highway, and such it is to all intents and purposes. In ascertaining the intent of the legislature as to this grant of authority, it may be useful to look at the course of legislation on this subject, and ascertain if we can whether the legislature of New Jersey, ever undertook to assign a specific portion of a highway, or other public improvement, to any particular individual, by direct enactment, and if they have never done it directly, we should be cautious to see that we are supported by sound principle, before we decide that they have done it indirectly.

The more early acts of Assembly direct the inhabitants of the several townships to repair their roads *by labor,* in proportion to their circumstances. I find no act authorizing cities, or townships, to impose any assessment, or tax, for this purpose, earlier than in November, 1792; when the inhabitants of certain specified townships in the counties of Burlington, Gloucester, Salem and Sussex, were authorized to make such assessments, " in the same manner and in the same proportion with the state taxes to be raised." This provision was by successive supplemental acts, extended to many other individual townships; until at length, the legislature, by the act, entitled " An act making provision for working and repairing the highways," passed the 16th day of March, 1798, authorized the inhabitants of the several townships, to determine, at their town meetings, the mode in which they will repair and work their highways, whether by labor, or by hire; and directs that if it be done by labor, it may be imposed upon the inhabitants according to their circumstances, in the same proportion with the tax for the support of government; and if by hire, that the monies necessary for that purpose shall be assessed and raised in the manner prescribed by the act entitled, " An act incorporating the inhabi-

tants of townships, designating their powers, and regulating their meetings," passed the 21st day of February, 1798. By which act, the assessors of the several townships are to assess the amount of tax to be raised " on the inhabitants and their estates, agreeably to the law for the time being, for the raising of money by taxation for the use of the state." And the legislature, in imposing taxes for the use of the state, have always done it, as it was their duty to do it, upon such principles as to leave to subordinate officers, as little opportunity to indulge their discretion, or caprice, their neighborhood partialities, or antipathies, as the nature of the case would permit.

It is a policy which pervades all our institutions, and is essential to our freedom, that we should be governed, and our property regulated, by general laws, in order that there may be as little opportunity as possible for the exercise of arbitrary power, by any officer of the government, from the highest to the lowest. The legislature, as I have shown, direct the townships to repair their highways, by general assessments, and have never resorted to the method of compelling each owner of land, whether resident or not, to make and keep in repair the highways leading through his land. Indeed, should this be attempted, it would be regarded as an insufferable addition to the present onerous practice of taking lands for highways without any compensation to the owner. Yet such a law could be upheld by every argument brought to sustain this ordinance. Indeed this goes one step further ; for the common council points out to each individual his portion of highway to pave, not merely running through, or over his land, but in its vicinity. Why then should not this corporation repair their highways in conformity to the mode prescribed for the townships. The power to make assessments is granted to it by the 7th section of the original charter, and by the aid of the supplemental act, they may be made for this purpose. Public burdens should be borne at public expense. The allotment to particular individuals of the portion of a public improvement which each shall effect, is an exercise of power to be regarded with great jealousy. To the suggestion made by counsel, that an oppressive use of this power need not be apprehended, for its correction exists in the very nature of

Paxson *v.* Sweet.

our popular institutions ;—the people would no more permit a common council to go beyond the proper limits of the power with which they are vested, than they would the legislative, or executive power,—it may be answered, that the way to arouse the people to an abuse of power is to make them *all* feel it.—— And it is the great recommendation of a general law over one of partial operation, that in the first case those who have the power to correct an abuse of authority will feel its oppression. As, in this case ;—the common council are appointed by the inhabitants of the city generally. If they deem an improvement necessary, in a street, or otherwise, and appropriate the common funds, or lay an assessment on the property of *all*, for the purpose, the attention of *all* will be called to it and the requisition, and those who made it, must stand, or fall, by the propriety of imposing the burden. But if that burden is imposed on only a few, however unnecessary in itself, or oppressive in its operation, the great body of the inhabitants, whose interests are rather advanced than prejudiced by the exercise of power, will be too apt to shut their eyes to its enormity.

Other arguments were used which would apply much more strongly to the case of imposing upon the owners of occupied buildings the burden of paving the side walks in front of them. But that is not the case now before the court, and I wish not to intimate any opinion about it, further than it may be affected by the general views above expressed. But if such a law can be justified, I am satisfied that one cannot be, assuming as this ordinance does, the power to oblige all owners, whether resident, or not, of lots, improved, or unimproved, to pave the side walks of the street in front of the same. This is a power too high, too unusual, too unequal in its operation and too liable to abuse, to be sanctioned without an express grant of the legislature.—— They should not be considered to have intended to vest such an authority without a clear manifestation of such intention. This power is not expressly granted in this case, nor is it necessary to carry into effect any other power delegated by the charter. I am therefore of opinion that the by-law, in this respect, is invalid; and that the judgment rendered in this case should be reversed.

CITED in *State* v. *Overton*, 4 *Zab.* 440; *Kip* v. *City of Paterson*, 2 *Dutch.* 301.